Good morning. May it please the Court. I'm Jennifer Fagert. I represent the appellants in this case. I'm joined by my co-counsel, Catherine Brereton. I would like to reserve four minutes of my time for rebuttal. All three officers in this case are entitled to qualified immunity. On July 8, 2014, there was an absence of clearly established law finding a Fourth Amendment violation based on facts that were similar in this case. In fact, the lower court was unable to point to a case with factually similar circumstances, yet denied the officers qualified immunity. And that is where the lower court erred. If we look at the undisputed facts of this case, if we watch the video, we see that these officers are forced to make one of those split-second decisions. It was a 15-second decision that the Supreme Court has cautioned us not to evaluate with a 20-20 vision of hindsight. But what we see are we see that these officers are put into a situation where they have to make a very quick decision in a circumstance that was very tense, very uncertain. They had very little information going into the incident, and that was certainly rapidly evolving. So you would agree that it's only a we can only grant qualified immunity where there's a legal issue. So what is the legal issue here? There are two legal issues, I believe, in this case. So the lower court did not correctly apply the law for two reasons. First, the lower court erred as a matter of law in treating the objective reasonableness of the law enforcement officers under the Fourth Amendment as a question of fact instead of a question of law. So we don't have any material issues of fact in this case. The facts are very straightforward. They're documented in the audio and video evidence that was submitted to the court, and there's no dispute as to the material facts of the case. So the issue of law with regard to the Fourth Amendment analysis is whether, based on the facts of this case, the material facts of this case, the officers acted reasonably at the time they shot Ms. Riley. And that's a legal issue for this Court to decide under the Fourth Amendment analysis and under Graham v. Connor. Second, the lower court was unable to point to a case that was factually similar to this case and that did not put the constitutional question beyond debate. And so the second step in a qualified immunity analysis requires the court to look as a matter of law as to whether the law was clearly established at the time of the incident. And the lower court didn't do that analysis at all in this case. They didn't go on to the second prong of the qualified immunity analysis and look at whether or not the law was clearly established. They made a broad and general... Counsel? I thought that's what the court was doing when it... In the last page of its order, page 35, the district court judge says what the arguments are, and the arguments seem to present a factual question as to whether or not the genetic posed an immediate threat to the officers. And then it made the legal finding that the court has found that under the particular facts of this case, a material dispute exists as to this crucial circumstance. And because this is a summary judgment, he said, then he must take the facts in the light most favorable to genetics, which is that she did not pose an immediate threat to the officers. Doing that, her right to be free from the use of deadly force was clearly established. And that's true, isn't it? It's a difficult case, but if the facts are in dispute, and you take the facts in the favor of the non-moving party, then you must take them that Janetta was not an immediate threat, and it is clearly established that if the person is not an immediate threat and cannot be reasonably determined to be an immediate threat, then they have a right to be free from lethal force, right? I would submit that the court found that there was an issue of fact as to whether or not the officers could infer that Janetta was a threat to the officers. That's not an issue of material fact. That's an inference or it's a dispute with regard to the characterization of the facts. It's the inferences that the court has drawn from the material facts that is in dispute at this time. So we can't say that there is an issue of material fact. We have audio and video that shows the two and a half, three minutes of what happened in this incident, and none of those facts are disputed. It's the party's interpretation of those facts that's disputed. Well, missing from the video are several things, right? Janetta's conduct after turning away from Johnson, including her conduct that caused Valenzuela and Ziegler to open fire, and her distance from them. You can't tell that from the video. And there's no clear indication of how she was holding the knife, and I believe the witnesses are, they differ on that. The husband was the witness, and the circumstances of her exiting the car, you can't see that. So how can you say they're, you seem to be relying totally on the video, but there's other evidence there that comes from the eyes of the people standing around. What happened, we can see what happened on the video to a certain extent. The small discrepancies that the parties are presenting to the court, such as were her hands up, were they at a tee, were they down, those are small discrepancies that don't elevate those issues to an issue of material fact, because we know that throughout the entire encounter, Janetta Riley had a knife in her hand, that she didn't drop the knife, and that she continued to approach the officers while adamantly refusing to drop the knife. So even if there is a question of fact as to what position her hand was, or if the knife was pointing up or if it was pointing down, we know that Janetta continued to hold on to the knife. We also know that, and we can see on the video, that when the officers arrived on scene, she immediately emerged from the vehicle and started walking toward the officers. We hear their commands. There's no dispute of fact as to what their commands were, and there's no dispute as to what her response was. There's no dispute as to how long the incident occurred, and there's no dispute as to what information the officers knew going into the incident, what was dispatched to them. So those are the material facts of the case. What did the officers know at the time? What was their response? And what was Janetta's response? The inferences that can be drawn from the case is the analysis that this Court has to do under the Fourth Amendment. Was it then reasonable for these officers to perceive a danger, an immediate threat of danger, based on those undisputed facts? We have different characterizations of the facts, of course, from the different parties, but we know what the facts were. We know how long it took them to get there, and we know how they responded. And the Supreme Court has recently, after briefing was submitted on this case, the Supreme Court reemphasized the Court's obligation to find clearly established law based on the specific facts of the case. In Kisla v. Hughes, the Supreme Court reiterated that a reviewing court must focus on whether the right was so clearly established that any reasonable officer confronted with the same situation would know that what they were doing violated the law. The lower court didn't go into that analysis. And we can take the Supreme Court's direction from Kisla and say, even if these law enforcement officers violated Ms. Riley's Fourth Amendment rights, there was no law clearly established at the time of the incident that would have let these officers know that their conduct was unlawful. The plaintiffs decided to no case, and the lower court couldn't find a case. May I ask a question? Given that the district court did find there were disputed issues of fact, do we have appellate jurisdiction over this appeal? You do. Because there aren't — even though the Court found that there were issues of material fact, we submit that those — there weren't issues of fact based on the record, and that this Court can then decide as a matter of law the Fourth Amendment. And I don't think that the Court found material issues of fact. They found that a reasonable jury could decide differently from the Court based on the facts presented.  It's how we are interpreting those facts and how a jury could interpret those facts. And I think that's where the Court erred. We're not — If this case were to go to trial, the plaintiff would call probably a police practices expert who would say that under these conditions, there were alternatives that would have — there was not a need for deadly force. And so the jury would have to decide not only was there force and not only was — whether she was actually a threat, but was the force used excessive? I mean, this is sort of black-letter 1983 law. So why isn't there a question of fact here? Because we have to look at this case from the perspective of the law enforcement officers, not from the perspective of an expert witness and not with the 20-20 vision of hindsight. And whether or not the — Objective. Objective. Objective, reasonable and standard, yes. because he or she knows the protocol of what police officers are supposed to do. Correct. In their opinion, what they're supposed to do. But we still have to look at the reasonableness of the officers on scene without the 20-20 vision of hindsight. And the Court has to do the analysis under the Fourth Amendment as to whether a reasonable officer would have known at the time that their conduct violated law. So even if we have a Fourth Amendment violation, the Court has to take that second step and look at the qualified immunity analysis with regard to the clearly established law. And the Supreme Court has reiterated that, that that step is very important. That's where we need to focus, that even if there was a constitutional violation and the Court could find that there was, then we go to the next step and determine whether or not the law was so clearly established in July of 2014 that would put these officers on notice. And we simply don't have that case law. The lower court couldn't find it. The plaintiffs haven't cited to it. And I have yet to find a case where it is held that officers acting within 15 seconds can't discharge their weapons when they feel that their lives are in imminent harm. And I will reserve the rest of my time for rebuttal. Thank you. May it please the Court, my name is April Linscott, and I am the attorney for the minor children of the late Janetta Riley. There is also counsel for Shane Riley, Janetta's husband here. So we are going to split our time on the argument. This case comes up from a denial of a motion for summary judgment. And the motion for summary judgment was based on the issue of qualified immunity. It's well established that in cases of qualified immunity, especially excessive force cases, summary judgment should be granted sparingly. And there's a good reason it should be granted sparingly. It's because we have been directed, the courts have been directed, repeatedly by the U.S. Supreme Court that you have to look at the totality of the circumstances. You have to look at all of the facts and the circumstances of every case individually, specifically, and you have to apply those facts to a set of factors in determining a balancing of interest between the individual's interest in their personal liberties and the government's interest in enforcing the law. Any time that you have a balancing of interest, a weighing of factors, and a looking at specific facts, you are rarely going to find that case where there is the golden thread of truth that is the same from the plaintiff's perspective and from the defense perspective. And this case is not one of those cases where there just simply are no disputed facts. One of the things that the defense has been most critical on in the argument today is whether there was a clearly established right that was the second prong of the analysis for qualified immunity, the first prong being whether a right was established or whether a right was violated in the first instance. But if you look at the second prong, what's clearly established, this idea that we have a question of fact preventing summary judgment leaps from the page. The Court is supposed to look at similar cases. How does the Court know which cases to even look at in determining whether there's a clearly established right when those facts haven't been determined? Well, Counselor May, I think you bring up a very good point as to how the Supreme Court and maybe some of the issues with how the Supreme Court has asked us to address qualified immunity. A lot of the literature is very critical of how the Supreme Court asks us to do qualified immunity, but that's where we are. And I don't know if it's pronounced Kissela or Kissela, but that's a rough case for you guys. And so they summarily reversed this Court for engaging in the analysis you're asking us to engage in now. So how do we get around that case? And particularly, there's a passage on page 1154 which I'll read. It says, in this case, Hughes, who was the person who was shot, was armed with a large knife, was within striking distance of, in this case, a civilian, not a police officer, ignored the officer's orders to drop the weapon, and the situation unfolded in less than a minute. And there the Supreme Court summarily reversed this Court for not going with qualified immunity. So you've got to get us around that case and particularly that passage. How do we do that? Sure. Here's how I think you get around that. You take to heart what the Supreme Court has said. You have to look at all the specific instances of a case within the framework of the factors that were given. And the Kissela Court or the Kissela case is distinguishable on virtually every factor that you look at. There were several facts. You know, for example, the officers were concerned about an immediate threat of harm. There were individuals that were within 6 feet of the person with the knife. The knife was big in the Kissela case. We're talking about a very small knife. There were no individuals next to Jeanetta Riley. She was by herself. In fact, when the officers pulled up, she was alone in the van. In Kissela, the officers were behind a fence. They couldn't get to these people that were potentially in harm's way. In our case, there was nothing obstructing anybody's movements. There was nothing obstructing anyone's view. The parties were much farther apart. And given the fact that there wasn't someone that was so in close proximity as these 6 feet away from the witnesses, there was nothing preventing the officers from backing up, from giving it some time. This wasn't a situation like so many of the cases where the threat is so imminent because of they're in a room. You know, they've had to, they're trying to serve a warrant in their room they can't get out of, or maybe they're outside of the room and the suspect is in the room and the officers aren't sure if there's people in harm's way there or if they can get out of the room. Those are the factors that are talked about by the Supreme Court that are being, that are important, and none of them exist in this case. Instead, what you have is there's nobody's in harm's way. There's nothing blocking the view. There's nothing that's preventing the officers from backing up. And in fact, one of the findings of the court, of the district court below, was that a reasonable juror could find that the officers didn't feel that they were that threatened in imminent harm because they continued to walk towards her the entire time. They're continuing to walk towards her. Up until the time they actually fire the shots, they're walking towards her. It's illogical to think that they would view themselves in imminent harm and continue to walk forward. That's the type of a question of fact that prevents summary judgment in this case. So before we, again, because we're not dealing with questions of fact here. We're just dealing with whether or not there was, the officers were on notice that by doing these, by taking the acts that you've alleged that they did, they would be violating the Fourth Amendment. So if we're going to distinguish that Supreme Court case from this year, what's the case that you would like us to say, see, here's the case that put them on notice. And it can't be Graham. It can't be just a general excessive force. We've been dinged by the Supreme Court for doing that. So you've got to give us something specific saying, look, in this case, the officers were confronted with this situation and it was close enough to put the officers on notice here. Sure. I cite the Secretary. That'll be easier. You bet. I cite to several cases in my brief. And then the Court also cites to several cases in its memorandum opinion. And those cases are Harris v. Roderick, Cornell v. Ridgecrest Police, Glenn v. Washington, Delorey, I don't know if I'm saying that right, v. Rutherford, and the Lau v. California case, even though that case didn't come out, that case, the final case, they did find excessive force, but there's still language in there that supports our position or my client's position, which is when there is no immediate threat of harm, the mere fact that a suspect is holding a weapon, and some of the cases go far, goes far to say it can be a gun, and a gun can be much more quickly more dangerous than a knife, the mere fact that they're holding a weapon is not enough to justify the use of lethal force. Those are the kind of cases that support a clearly established right. So here we have an individual who is suicidal, mentally ill. Clearly she wants to commit suicide and perhaps suicide by cop. The mere fact that she wants that to happen, it lessens the interest that the government has in using lethal force, because they're not going after a criminal, they're not going after someone who's threatening imminent harm to the police officers, they're not going after someone who's threatening imminent harm to individuals. Simply the fact that she wants to be shot, these cases stand for the proposition and she has a weapon, it's not enough. It's not the police officers' subjective view of whether they felt threatened or not that's at question here. It's an objective reasonable person standard, which I would argue is a question for the jury to determine. Juries determine all of the time reasonable person standards and what is an objective reasonable person standard. Was it reasonable for these officers to believe, given the situation, given the amount of time that they had, that they were in imminent danger, given all of the facts? Had they taken the time to slow down and look and see what was there to see, that there were no people around in danger, that they could back up, that while Ms. Riley was disobeying some commands, she was obeying others, and she simply needed to have the time to do it. I will leave... Counsel, I just... Casella raised concern for me too. I think the one thing that I think really distinguishes the issue in front of us today from the issue in front of our court in Casella is that this district court said there was a dispute of material fact or material disputed facts as to the immediacy of the threat. Whereas in Casella, the district court had granted summary judgment on the qualified immunity, and so he necessarily did not find that there were disputed issues of material fact. Then we reversed him, saying on the clearly established prong. Am I wrong in reading this case as one where we don't know whether there... I mean, there's just too many facts in dispute, as to know whether there was an immediate threat of harm to someone or not? That would be my argument, yes, is that there are too many facts in dispute. My question is, do we even have jurisdiction, given that finding? I'm concerned about how that law applies here. Yes, clearly the court has jurisdiction to determine summary judgment matters. I mean, they come up before the court. There was another one earlier today. Well, but hold on, but to get to make sure we're talking the same thing, this was a denial of summary judgment. Yes. So our jurisdiction is actually very limited. This is not like the case involving the lady that fell at the restaurant, where summary judgment was granted. So make sure when you're answering Judge Wardlaw's question, that you're mindful of her concern, is that in this context, we don't get to resolve issues of fact. We have to take the facts as you want them, and then we decide whether qualified immunity should have been honored. So on the fact stage, you win right now at this stage. So don't worry about trying to argue us off that. You're where you want to be. It's a matter of then trying to convince us that my summary judge or qualified immunity should not have been granted on the facts as you want them to be. The court has jurisdiction to look at the facts as they were determined by the court below, and has jurisdiction to say, okay, court below, you said that these facts were material, and there was genuine disputes about these facts. So the court can look at that, and they can say, do we think that's true? If you think that that's true, that there are genuine issues of material fact, then that decision is categorically unreviewable. That's the state of the law. And I want to leave some time for my colleague. Certainly. We'll give you a little extra time. I know it's tough. When you go up first, you always eat the other person's time. Do you want to give him a chance now? I'm sorry? Do you want to give him a chance now? Oh, yes. All right. We'll give you — let's do this. Let's just give him five. It's not seven and a half, but it'll do. I put five down anyway. I gave him more time to start with to begin with. May it please the court. My name is Rudolph, and I'm an attorney for Mr. Shane Riley. I just wanted to bring up a few other issues that weren't touched on by Ms. Lynn Scott earlier, is when we're looking at these cases, she did a great job discussing the facts, but we don't look — we're supposed to look at the totality of the circumstances. And one of the things that's not really looked at at all by the officers in this case is they created the situation that they fell into. And by creating the situation, they create the fear that they may or may not have had. And that's where we're saying there's an issue of fact, is because of the way they responded, the way they ran at the situation, the way they pulled their guns, the way they approached the scenario, they created this emergency that may not have had to happen. It's also — go ahead. I thought that there was a Supreme Court case in the last year where the Ninth Circuit got reversed, and the doctrine was that, that we had said if you create the emergency, and the Supreme Court reversed that. Maybe I'm just pulling out of thin air, but I remember there being that case. I don't have that one on top of your mind. But along those lines, that's still not the sole issue on why you would decide this case. That's one of the factors when you're looking at the totality of the circumstances. Also, which is important here, is Officer Zeigler had his taser out. There was less invasive uses of force available. He put it away and shot her. So, you know, that's one thing that you can look at right there that shows that there was a less invasive option available, and they refused to use it. And that's something that the jury could decide and look at, yeah, that's definitely not — a reasonable officer wouldn't do that. Now, that situation also becomes different when you have one officer versus three officers. And that's one thing I think you look at, too, is if this is one officer, he has his gun out, you're not expecting him to put it away and pull out his taser or his mace. He needs to protect himself more. But when you have three officers, you're looking at a larger controlled, or hopefully controlled, situation. More officers involved in this situation to help protect. I find it interesting, too, that none of the evidence or statements presented by the officers say that Janetta brandished her knife at them. They say she lifted it, she was holding it in her hand, but no one said she actually lunged at them with the knife. That's an important factor there, too, that that's not there. And if she's not making that lunge or that threat in actions, that's one of the officers who likely don't have a reason to respond with any type of force. You know, you asked about a police practices expert earlier, and I think that goes to the question, too, as to whether the officers were competent in what they did. And that's a question that would come up with a police practices expert. In fact, the declaration submitted with the documents, there was a police practices expert that talks about the reckless nature of this conduct. And if we get to that incompetent standard or reckless standard, then I don't think you really have to come and find a case directly on point because you have reckless conduct that avoids, that bypasses that factor. Also, when you're looking at these cases, I think you find that there was four witnesses, two of the witnesses, Shane Riley and Officer Johnson. Officer Johnson particularly said he wasn't afraid. Shane said it didn't look like she was going to attack, looked like she was going to get shot, that she wanted to be shot. And so you have definite different opinion on the demeanor of Ms. Riley as she's approaching the officers. And I just want to be clear on one procedural point real quick is we're here. There's also an issue against Officer Johnson for his handling of Mr. Riley after the fact and detaining. That's not an issue that was briefed or part of the qualified immunity discussion today. I just want to make sure that's clear there. With those issues in mind, that's essentially what I had to add, unless the court has any additional questions for me. We'll give you four minutes. The qualified immunity standard, the grant for qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. If this court is to deny the officers qualified immunity, this court is essentially saying that both Officer Valenzuela and Officer Ziegler acted incompetently when they both perceived the exact same threat at the exact same time and responded in the exact same way by discharging their weapons, by using lethal force. So we have to look at this from the officer's perception. We have to look at what was known to the officers at the time, and we have to view that from their perception. On the video we see both officers perceive an immediate threat of harm when they react to something offscreen. We don't know what that is, but they both react simultaneously. They both flinch backwards and they both shoot at the exact same time. They perceived the exact same threat of imminent harm at the exact same time and they reacted with the same level of force. Now, the plaintiffs argue that they didn't consider less than lethal options. Two of the officers did in this case. And even though a law enforcement officer is not required to use the least intrusive means, their response does have to be objectively reasonable. We have two officers in this case that considered a taser. Officer Johnson said, I did consider a taser. I saw the dot on Janetta because Officer Ziegler had pulled out his taser. I saw the taser and I thought, yeah, I'll use a taser, but by then she was out of range. We see on the video that Officer Ziegler transitions from his gun to his taser and then back to his gun when Janetta Riley is so close to him that he has one chance to subdue her. And he told the investigating officers at the end after the incident that he knew he had one shot and if the taser didn't work, Janetta was going to be right there and able to stab him. And so what this Court has to do is it has to look at those specific facts in the case and then it has to look at earlier precedent and see if based on those facts, these officers would have known that within 15 seconds of having an armed suspect coming at them and it's conceded and there's no dispute, all parties are moving at this time. Janetta's on the move. The law enforcement officers are approaching them. But it's happening and she's coming at them so quickly that these officers don't have time to back up. They're telling her, drop the knife. She says, no. Drop the knife. No. Bring it on. Drop the knife. No. Drop the knife. No. It would have taken her less than a second to open up her hand and drop the weapon, which she didn't do in this case. We have no other cases in this circuit or from the Supreme Court that are factually similar enough to this case that would have let the law enforcement officers know that they couldn't shoot her at that time, that it was unreasonable for them to perceive that a suspect who was coming at them with a knife, refusing to drop the weapon, adamantly refusing to drop the weapon. She wasn't just passively standing there with a knife in her hand. She's coming at them. They're saying, drop the knife. She says, bring it on. We have no other case law in this circuit. The lower court couldn't point to any. The plaintiffs couldn't point to any. And if the court can't point to a case that's factually similar to this one, where there was a constitutional right violated and the law enforcement officers were not entitled to qualified immunity, how are the law enforcement officers in this case to know that their conduct was unlawful? I would submit that based on the Supreme Court's guidance in Kissela v. Hughes, there's no clearly established law based on the vast circumstances of this case, and therefore the law enforcement officers are entitled to qualified immunity. Thank you. Thank you very much, counsel. Thank you both for your argument. That wraps up this week. Again, thank you, Judge, for pitching in. We really appreciate it. And we are adjourned. Now, for the law students who are here to hear from the judges, you're actually going to hear from the law clerks first, which actually might be more interesting, while we conference. And then when we're done conferencing, we will come out and talk to you guys for a little bit. Okay? All right. And with that, we're adjourned.
judges: Wardlaw, Owens, Lefkow